1 | VAN VLECK TURNER & ZALLER LLP
   Brian F. Van Vleck, SBN 155250
2   Daniel J. Turner, SBN 207654
555 West Fifth Street
3 31st Floor
Los Angeles, California 90013
4 Telephone: (213) 996-8445
Facsimile: (213) 996-8378
5
6 Attorneys for Certified Classes and Plaintiffs
Patrick A. Copeland and Jackie Dagnesses

7

8

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

| 12  PATRICK A. COPELAND and JACKIE DAGNESSES, | ) | CASE NO: CV07 04865-FMC-JCx |
| 13 | ) | Judge Florence-Marie Cooper |
|        Plaintiffs, | ) | |
| 14        vs. | ) | |
| 15  MCI COMMUNICATION SERVICES INC, dba VERIZON BUSINESS, and | ) | **BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATION OF BRIAN VAN VLECK AND DANIEL J. TURNER** |
| 16  DOES 1 through 100 inclusive. | ) | |
| 17        Defendant. | ) | |
| 18 | ) | |
| 19 | ) | DATE:   October 30, 2009 |
|  | ) | TIME:    2:30 p.m. |
| 20 | ) | |
| 21 | ) | |
| 22 | ) | Complaint Filed: May 24, 2007 |
|  | ) | Trial Date: None Set |
| 23 | ) | |

24

25

26

27

28

VAN VLECK
TURNER & ZALLER, LLP

**TABLE OF CONTENTS**

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | LITIGATION HISTORY – CLAIMS, CLASSES, DISCOVERY | | 1 |
| | A. | Claims | 1 |
| | B. | Discovery And Rulings | 2 |
| III. | MEDIATION AND THE SETTLEMENT AGREEMENT | | 4 |
| | A. | The Redefined Settlement Classes | 4 |
| | B. | The Settlement's Monetary Terms | 5 |
| IV. | NOTICE TO THE CLASS | | 6 |
| V. | CLASS PARTICIPATION | | 7 |
| VI. | THE SETTLEMENT EASILY MEETS THE STANDARD OF BEING "FUNDAMENTALLY FAIR, ADEQUATE, AND REASONABLE." | | 7 |
| | A. | The Strength Of Plaintiffs' Case And The Risk And Complexity Of Further Litigation Strongly Favor Final Approval | 8 |
| | | 1. VBNS' Conditional Class No. 1 Defenses | 8 |
| | | 2. VBNS's Conditional Class 2 Defenses | 10 |
| | | 3. VBNS' Conditional Class 5 Defenses | 13 |
| | B. | The Settlement Is A Fair Compromise Of Contested, Factually Complex Claims Subject To Many Legal Uncertainties | 15 |
| | C. | The Extensive Discovery Completed And The Stage Of The Litigation Favor Approval Of The Settlement | 16 |
| | D. | Counsel Are Experienced And Jointly Support The Settlement | 17 |
| | E. | The Reaction Of The Class Overwhelmingly Favors Final Approval | 17 |
| VII. | THE FEES SOUGHT ARE REASONABLE, FAIR AND APPROPRIATE | | 18 |
| | A. | Excellent Results Class Counsel Achieved Support The Fee Request | 19 |
| | B. | Substantial Litigation Risks Support Class Counsel's Fee Request | 20 |
| | C. | The Difficulty Of The Questions Involved And The Skill In Presenting Them Support Class Counsel's Fee Request | 21 |
| | D. | The Contingent Fee Supports Class Counsel's Fee Request | 21 |
| | E. | Awards In Similar Cases Support Class Counsel's Fee Request | 22 |
| | F. | No Class Members Disapproved Of The Requested Fee Award | 23 |
| | G. | The Fee Request Is Confirmed By The Lodestar Methodology | 23 |
| VIII. | THE NAMED REPRESENTATIVES' AWARDS ARE REASONABLE | | 24 |
| IX. | CONCLUSION | | 25 |

1

# TABLE OF AUTHORITIES

2

**Page**

3

<u>Cases</u>

4

181 F.R.D. 243, 262 (S.D.N.Y. 1998) ........................................................... 24

5

*Apple Computer, Inc.,*
     126 Cal. App. 4th at 1270 ........................................................ 18

6

*Bell v. Farmers Ins. Exch.,*
     115 Cal. App. 4th 715 (2004) ................................................... 24

7

8

*Blackwell v. SkyWest Airlines, Inc.,*
     245 F.R.D. 453 (S.D. Cal. 2007)............................................... 12

9

*Boyd v. Bechtel Corp.,*
     485 F.Supp. 610 (N.D.Cal. 1979) ........................................... 16

10

11

*Chem. Bank v. City of Seattle,*
     19 F. 3d 1291 (9th Cir. 1994).................................................... 18

12

*Churchill Village v. Gen. Elec.,*
     361 F.3d 566 (9th Cir.1994)...................................................... 18

13

14

*Cullen v. Whitman Medical Corp.,*
     197 F.R.D. 136 (E.D. PA 2000) .......................................... 19, 23

15

*Diaz v. Elec. Boutique of Am., Inc.,*
     2005 WL 2654270 (W.D.N.Y. 2005) ...................................... 13

16

17

*Hensley v. Echerhart,*
     461 U.S. 424 (1983) .................................................................. 19

18

*Holt v. Rite-Aide Corp.,*
     333 F. Supp. 2d 1265 (M.D. Ala. 2004) .................................. 14

19

20

*In re Crazy Eddie Securities Litig.,*
     824 F. Supp. 320 (E.D.N.Y. 1993) .......................................... 19

21

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
     55 F.3d 768 (3rd Cir. 1995) ...................................................... 22

22

23

*In re Heritage Bond Litigation,*
     2005 WL 1594401 (C.D. Cal. 2005)....................................... 8, 18

24

*In re Omnivision Technologies, Inc.,*
     559 F.Supp. 1036 (N.D. Cal. 2008) ................................... passim

25

26

*In Re S. Ohio Correctional Facility,*
     175 F.R.D. 270 (S.D. Ohio 1997) ............................................ 24

27

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v.*
     *Baumer,*
     1989 WL73211 (C.D. Cal. 1989)............................................. 17

28

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*
    __ F.3d __, 2009 WL1927711 (9th Cir., July 07, 2009)........................................ 14

*Ingram v. The Coca-Cola Co.,*
    200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................ 24

*Jimenez v. Dominoes Pizza, Inc.,*
    238 F.R.D. 241 (C.D. Cal. 2006) ...................................................................... 13

*Lealo,*
    82 Cal. App. 4th at 51 ...................................................................................... 22

*Local 10, International Longs v. J-Way Leasing,*
    2008 WL 5054081 (Cal. Sup. Ct., May 23, 2008) .......................................... 11

*Maria P. v. Riles,*
    43 Cal. 3d 1281 (1987) .................................................................................... 18

*Martens v. Smith Barney,*
    No. 96 Civ. 3779, 1998 WL 1661385 (S.D.N.Y. July 28, 1998)...................... 24

*McCoy v. Superior Court*
    (2007) 157 Cal.App.4th 225 ............................................................................ 11

*Medical X-Ray,*
    1998  WL 661515 ............................................................................................ 21

*Moeck v. Gray Supp. Corp.,*
    2006 WL 42368 (D.N.J. 2006) ........................................................................ 13

*Nat'l Rural Telecom. Coop. v. DIREC-TV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 8, 17

*Neisendorf v. Levi Strauss & Co.*
    (2006) 143 Cal. App. 4th 509 ............................................................................ 9

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982).............................................................................. 8

*Pineda v. Bank of America, N.A.*
    (2009) 170 Cal.App.4th 388 ............................................................................ 11

*Powers v. Eichen,*
    229 F. 3d 1249 (9th Cir. 2000).......................................................................... 21

*Powis v. Moore Machinery Co.*
    (1945) 72 Cal.App.2d 344.................................................................................. 9

*Prachasaisoredej v. Ralphs Grocery Co.*
    (2007) 42 Cal.4th 217 ........................................................................................ 9

*Ramirez v. Yosemite Water Co.,*
    20 Cal.4th 785 (1999) ...................................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*Rebney v. Wells Fargo Bank,*
     220 Cal.App.3d 1117 (1990)......................................................................... 15

*Reich v. Homier Distrib. Co., Inc.,*
     362 F. Supp. 2d 1009 (N.D. Ind. 2005) ......................................................... 13

*Roberts v. Texaco,*
     979 F. Supp. 185 (S.D.N.Y. 1997)................................................................. 24

*Rodriguez v. West Publishing,*
     563 F.3d 948 (9th Cir. 2009)..................................................................... 18, 24

*Sav-On Drug Stores, Inc. v. Superior Court,*
     34 Cal.4th 319 (2004) ..................................................................................... 14

*Sepulveda v. Wal-Mart Stores Inc.,*
     237 F.R.D. 229 (C.D. Cal. 2006) ................................................................... 13

*Shaw v. Toshiba Am. Info. Systems,*
     91 F.Supp. 2d 942 (E.D. TX. 2000) .............................................................. 23

*Six Mexican Workers v. Ariz. Citrus Growers,*
     904 F. 2d 1301 (9th Cir. 1990)....................................................................... 18

*Smith v. Dominion Bridge Corp.,*
     2007 WL 110272 ( E.D. Pa 2007) ................................................................. 22

*Staton v. Boeing Co.,*
     327 F.3d 938 (9th Cir. 2003)............................................................................ 7

*Vinole v. Countrywide Home Loans, Inc.,*
     246 FRD 637 (S.D. Cal. 2007)....................................................................... 13

*Vizcaino,*
     290 F. 3d at 1048....................................................................................... 20, 23

*Westside Cmty. for Indep. Living, Inc. v. Obledo,*
     33 Cal. 3d 348 (1983) ..................................................................................... 18

*Williams v. MGM-Pathe Comms., Co.,*
     129 F.3d 1026 (9th Cir. 1997)........................................................................ 22

*Windesheim v. Verizon Network Integration Corp.,*
     212 F. Supp. 2d 456 (D. Md. 2002) ................................................................. 9

**Statutes**

29 U.S.C. § 201 ...................................................................................................... 2

Cal. Bus. & Prof. Code § 17200 ........................................................................... 2

Cal. Lab. Code § 1194 ........................................................................................... 2

# TABLE OF AUTHORITIES
(continued)

**Page**

Cal. Lab. Code § 201 ...................................................................................... 2

Cal. Lab. Code § 202 ...................................................................................... 2

Cal. Lab. Code § 203 ........................................................................... 2, 10, 11

Cal. Lab. Code § 208 ...................................................................................... 2

Cal. Lab. Code § 223 ...................................................................................... 2

Cal. Lab. Code § 226 ...................................................................................... 2

Cal. Lab. Code § 510 ...................................................................................... 2

Cal. Lab. Code § 515 ...................................................................................... 2

Civ. Proc. Code § 1021.5(a) ......................................................................... 18

Civ. Proc. Code § 338 .................................................................................. 11

Civ. Proc. Code § 340 .................................................................................. 11

Civ. Proc. Code § 340(a) ............................................................................. 11

Lab. Code § 218.5 ........................................................................................ 18

**Other Authorities**

California Industrial Welfare Commission Wage Order 4-2001 ..................... 2

**Rules**

Cal. R. Ct. 12 ............................................................................................ 2, 3

Cal. R. Ct. 23-3 .......................................................................................... 22

Fed.R.Civ.P. 23(e) ........................................................................................ 7

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

The Settlement of this action was reached following a hard-fought adversarial litigation and was the result of a negotiated arms-length bargain.  As this Court already has found in preliminarily approving the Settlement, it bestows substantial benefits to the participating class members.  Since the Court's approval, the results of the notice given the class members and the claims process confirm that final approval is appropriate.  Of 3506 class members given notice, none has objected.  And just three have opted out.  More than 48% of the Net Settlement Amount has been claimed, including **over 90% of the funds allocated to Class No. 1.**

This favorable reception by the Class also favors final approval of Class Counsel's fee request, which is not opposed by Defendants.  The request for $1,123,500 in attorney's fees – roughly 32% of the amount of the total Settlement Proceeds – is directly in line with the prevailing "percentage of the recovery" guidelines developed in federal class action case law.  Moreover, this amount is well below the applicable "unadorned" lodestar amount to which Class Counsel would be entitled based on the number of attorney hours dedicated to this two and one half years of extremely hard fought litigation against formidable opponents.

The Court should likewise approve the $25,000 enhancement award for named plaintiff Copeland and the $10,000 enhancement award for named plaintiff Dagnesses.  Both awards are well supported based on their contributions and efforts in support of the litigation and neither is opposed by Defendant.

For all of these reasons, the Court should grant final approval to the Settlement, including Class Counsel's request for reasonable attorneys' fees and costs and the requested enhancement awards for the class representatives.

**II.   LITIGATION HISTORY – CLAIMS, CLASSES, DISCOVERY**

**A.   Claims.**

In May 2007, Plaintiffs initiated this wage and hour putative class action

against their former employer, VBNS and MCI Communications Services, Inc.
Plaintiffs asserted "Counts" for declaratory relief, injunctive relief, disgorgement and
restitution, and recovery of statutory remedies, and they sought to represent five
separate classes of current and former employees of VBNS.  Docket 1, 7, 65, 69, and
110.  Plaintiffs alleged that Defendants had engaged in various wage-related
misconduct from May 25, 2003 to the present, including that Defendants had:
(1) wrongfully withheld earned wages; (2) improperly made deductions from
employee wages; (3) improperly made retroactive changes to commission formulas;
(4) failed to provide accurate wage statements; (5) failed to pay overtime
compensation; (6) failed to provide meal and rest periods; (7) failed to pay wages
upon termination; (8) failed to pay waiting time penalties; (9) failed to properly
calculate vacation pay; (10) required waiver  of Labor Code provisions, and (11)
engaged in other unspecified unfair business practices.[1]

### B.     Discovery And Rulings.

This litigation was hard-fought from the beginning.  After removal, VBNS
filed Rule 12 motions seeking to dismiss the action entirely or – at the very least – to
strike each of Plaintiffs' class allegations.  Van Vleck Decl. ¶ 5; Docket 8, 9, 12, 13.
In response to these motions, Plaintiffs substantially revised their Complaint to
address the various issues raised by VBNS' pleading challenge.  Docket 7.

Thereafter, Defendants obtained leave to file, and then filed, an additional
motion to dismiss/motion to strike, which Plaintiffs opposed.  Van Vleck Decl. ¶ 6;
Docket 31, 33, and 37.  Though the Court conducted oral argument on November 20,
2007, it did not issue a ruling at that time.  Despite not knowing which claims – if
any – were to survive VBNS' pleading challenge, Class Counsel nevertheless
continued their factual investigation and conducted formal discovery as the date by

---

[1]  Plaintiffs claimed this alleged misconduct violated numerous sections of the California
Labor Code, including 201, 202, 203, 208, 223, 226, 510, 515 and 1194, California's Unfair
Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., California Industrial Welfare
Commission Wage Order 4-2001, and the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

VAN VLECK
TURNER & ZALLER, LLP

1  which to move for certification was fast approaching. Beginning in November 2007

2  and continuing through January 2008, Class Counsel engaged in substantial

3  discovery efforts in order to prepare its Motion for Class Certification. Van Vleck

4  Decl. ¶¶ 6, 7.

5       As Class Counsel poured over this large and complicated data set, they began

6  preparing their Motion for Class Certification even though they did not know

7  whether their efforts would be rendered moot by the Court's eventual Rule 12 ruling

8  or by its ruling regarding the timeliness of their motion. Nevertheless, after

9  extensive discovery and factual investigation, Plaintiffs filed their Motion for

10  Certification on February 11, 2008. Docket 52-11; Van Vleck Decl. ¶ 8.

11       In the approximately eight months between the filing of that motion and the

12  date of the certification hearing, Class Counsel propounded still more discovery and

13  VBNS produced thousands of additional pages of responsive material, including

14  documents reflecting the Company's internal deliberations regarding the application

15  of the 200% performance provision as well as the year end "true-ups" for each of the

16  employees subject to that provision. In addition, prior to the certification hearing,

17  Plaintiffs brought a motion to compel supplemental discovery responses in an effort

18  to obtain the contact information of the approximately 3,500 class members and

19  additional information regarding the final payment of wages. Docket 85-90. VBNS

20  opposed that motion, and the Magistrate Judge required supplemental briefing on a

21  number of complicated issues. Docket 92 and 96-97; Van Vleck Decl. ¶ 9.

22       After conducting oral argument on the Motion for Certification in October

23  2008, the Court issued an Order conditionally certifying the following classes:

24     *Conditional Class 1:  All California employees of VBNS who were covered by its*

25  *written Commission Plan Policies (the "Commission Plan") from 2006 to date,*
   *containing a "200% Performance Review" provision, whose scheduled sales*
   *commissions were not paid in full by VBNS even after the customer had remitted*

26  *payment for the sale.*

27     *Conditional Class 2:  All California employees of VBNS who, after May 25, 2003,*

28  *did not receive payment of their final earned wages immediately upon the date of*
   *their termination, or within 72-hours of giving notice of resignation.*

3

1  *Conditional Class 5: All California employees with the job title of Account Manager or Service Manger, who were assigned to VBNS' internal "Band Level 7" designation and were deemed ineligible for overtime pay without an individualized analysis of their job duties.*

3  Docket 100; Van Vleck Decl. ¶ 10. VBNS then asked the Court to reconsider

4  and/or clarify its previous order. Docket 102. On December 12, 2008, the Court

5  clarified aspects of the order and modified the conditional classes. Docket 108. The

6  Court also set June 1, 2009 as the deadline for Plaintiffs to file a "Motion for Final

7  Class Certification or Motion to Remove Conditions on Class Certification." *Id.,* 10.

8  **III.  MEDIATION AND THE SETTLEMENT AGREEMENT**

9  Given the procedural and merit-based uncertainties of this action, in February

10  2009 the parties began significant discussions concerning the possibility of resolving

11  this dispute through private mediation. After discussing a variety of potential

12  mediators, the parties agreed to mediate this matter before David A. Rotman of

13  Gregorio, Haldeman, Piazza, Rotman, Frank and Feder. The parties scheduled their

14  mediation for May 7, 2009. Turner Decl. ¶ 4.

15  Even though Plaintiffs had already completed substantial discovery, counsel

16  repeatedly met and conferred regarding what additional information would be

17  required in order for the parties in fully prepare for the mediation. *Id.* ¶ 5. After

18  numerous, lengthy conference calls between counsel, the parties negotiated and

19  memorialized a broad additional exchange of information in advance of the

20  mediation. *Id.* ¶ 6; Docket 130 (herein "Kemple Decl.") ¶4 Exh. 2 (Agreement).[2]

21  The parties exchanged detailed position statements and on May 7, 2009

22  mediated the matter to conclusion before mediator Rottman. Turner Decl., ¶¶ 4, 13.

23  **A.     The Redefined Settlement Classes.**

24  Defendants have agreed, for settlement purposes only, not to oppose

25  certification of the following three redefined settlement classes:

26  *Settlement Class One -- All current or former employees of Verizon*

---

[2]  For a full account of the parties' exchange of information and efforts in preparing for mediation, see Turner Decl. ¶¶ 4 to 13 at 5-8.

4

1    *Business Network Services Inc. in California who exceeded 200% performance as to their Sales and/or CPE components in 2006 and whose commissions were capped pursuant to the 200% Performance Review provision in the 2006 Compensation Plan and Policy documents; and (2) who did not sign a release of claims relating to their employment with Verizon Business Network Services Inc.*

4    *Settlement Class Two -- All individuals whose employment with VBNS in California was terminated (voluntarily or involuntarily) between May 25, 2003 and the Preliminary Approval Date; and (2) who did not, on or after the last date of employment with VBNS, sign a release of claims relating to their employment.*

7    *Settlement Class Five -- All individuals employed by Verizon Business Network Services Inc. in California in Career Band 7 at any time between January 1, 2006 and the Preliminary Approval Date who held the title of Account Manager I, Account Manager II, Service Manager, and/or Specialist Service; and (2) who did not sign a release of claims relating to their employment with Verizon Business Network Services Inc.*

**B.    The Settlement's Monetary Terms.**

The basic terms of the proposed Settlement, which was submitted with the Joint Motion for Preliminary Approval and is on file herein, are as follows:

- VBNS is to pay up to $3,450,000 in monetary relief ("the Settlement Proceeds") (Ex. 1, Settlement Agreement at II.A.);

- Class Counsel will request, and VBNS will not oppose, an award of costs and expenses actually incurred by Class Counsel in the amount of $50,000 to be paid from the Settlement Proceeds (*id.* at II.K.2.);

- Plaintiffs will request, and VBNS will not oppose, attorneys' fees incurred by Class Counsel on behalf of the Plaintiffs and the Class Members in the amount of $1,123,500, roughly 32% of the Settlement Proceeds (*id.* at II.K.2.);

- A mutually selected Claims Administrator will be retained and Administrative Costs will be paid from the Settlement Proceeds to the Administrator who will handle notice to the class, make monetary and tax payments, and advise VBNS of tax payments due from it, with costs not exceed $105,000 (*id.* II.B.1;

- The remainder of the Settlement Proceeds, specifically **$2,171,500**, was made available to be claimed by class members prior to final approval for distribution after Final Approval as follows:

  → Depending on the claim rate, up to **$2,136,500** (the "Net Settlement

1  Amount") was made available for distribution to Class Members of each

2  of the three classes.  Specifically, thirty-five percent (35%) of the Net

3  Settlement Amount **$740,775**, was allocated and made available for

4  distribution to Settlement Class One members based on potential

5  commissions in excess of the cap or freeze at issue on that claim.  Forty-

6  Five percent (45%) of the Net Settlement Amount, specifically

7  **$961,425**, was allocated and made available for distribution to

8  Settlement Class Two members in even amounts.  Twenty percent

9  (20%) of the Net Settlement Amount, specifically **$427,300**, was

10  allocated and made available to Settlement Class Five members based

11  on the number of work weeks each class member worked in the

12  applicable job titles during the class period.  *Id.* at II.C.1 - II.C.4.;

13  → Subject to Court approval, a service award of **$25,000** will be made to

14  named Plaintiff Copeland and a **$10,000** service award will be made to

15  named Plaintiff Dagnesses in recognition and consideration of their

16  initiative, time and effort, for the benefit of the Class. *Id.* II.K.2, II.L.11.

17  ## IV. **NOTICE TO THE CLASS**

18  On July 27, 2009, this Court granted preliminary approval of the Settlement,

19  certified the three re-defined classes for settlement purposes, and directed that the

20  Notice of Proposed Settlement of Class Action Lawsuit ("Notice") be mailed to

21  members of the Class.  (Docket 136.)  On August 14, 2009, the Claims Administrator

22  – The Garden City Group, Inc. ("GCG") – mailed a Notice of Class Action

23  Settlement, Class Action Claim Form and Instructions, Class Member Request for

24  Exclusion Form and a return envelope ("Notice Packet") with first-class postage and

25  USPS return service requested to the 3,506 persons on the mailing list.[3]  Notice

26  

27  [3] Each Claim Form was personalized with an indication of whether the recipient was a
member of each class.  If the recipient was a member of a class, the Claim Form was pre-

28  printed with the estimated settlement amount related to that class.  Blair Decl. ¶ 4, Exh. A.

1 Packets that were returned with a forwarding address information were promptly re-

2 mailed to the corrected address.[4]

## V. CLASS PARTICIPATION

4     As a result of this Court approved notice, and additional efforts taken by Class

5 Counsel to ensure that Class Members were informed of the Settlement as well as to

6 assist in correcting deficient Claim Forms, over **48% (or $1,033,041.37) of the Net**

7 **Settlement Amount** was claimed by the Class.  The amount breaks down as follows:

| | Number of Authorized Claimants | Amount of Net Settlement Amount Claimed | Amount of Net Settlement Amount Available | Percentage of Net Settlement Amount Claimed |
|---|---|---|---|---|
| **Class 1** | 28 | $686,005.46 | $747,775.00 | 91.73% |
| **Class 2** | 675 | $193,139.96 | $961,425.00 | 20.08% |
| **Class 5** | 60 | $153,895.95 | $427,300.00 | 36.01% |
| **TOTAL** | 763 | $1,033,041.37 | $2,136,500.00 | 48.35% |

15 Blair Decl. ¶ 7.  Without question, these claim rates are high for a wage/hour class

16 settlement, particularly one spanning more than six years.

## VI. THE SETTLEMENT EASILY MEETS THE STANDARD OF BEING

18     **"FUNDAMENTALLY FAIR, ADEQUATE, AND REASONABLE."**

19     Settlement of a class action requires approval of the court and the court must

20 find that the proposed settlement is fundamentally fair, adequate and reasonable.  *See*

21 Fed.R.Civ.P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  In

22 making this determination, the court *may* consider any or all of the following factors:

23 (i) the strength of plaintiffs' case; (ii) the risk, expense, complexity, and likely

24 duration of further litigation; (iii) the risk of maintaining class action status

25 throughout trial;  (iv) the amount offered in settlement; (v) the extent of discovery

---

27 [4] In addition, GCG maintained a toll free telephone helpline, where callers could obtain information about the Settlement.  Blair Decl. ¶ 6.  During the claims period, live operators

28 received and responded to more than 100 calls from Class Members.  (*Id.*)

BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

VAN VLECK
TURNER & ZALLER, LLP

1   completed and the stage of the proceedings; (vi) the experience and views of counsel;

2   (vii) the presence of a governmental participant; and (viii) the reaction of the class

3   members to the proposed settlement. *In re Omnivision Technologies, Inc.*, 559

4   F.Supp. 1036, 1040-41 (N.D. Cal. 2008), *citing Officers for Justice v. Civil Serv.*

5   *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

6        When balancing these interests, the court's inquiry is "ultimately limited" to

7   the "extent necessary to reach a reasoned judgment that the agreement is not the

8   product of fraud or overreaching by, or collusion between, the negotiating parties."

9   *Id.* In evaluating the agreement of the parties, the Court is not to reach the merits of

10  the case or form conclusions about the underlying questions of law or fact. *Id.*

### A. The Strength Of Plaintiffs' Case And The Risk And Complexity Of Further Litigation Strongly Favor Final Approval.

12       "In most situations, unless the settlement is clearly inadequate, its acceptance

13  and approval are preferable to lengthy and expensive litigation with uncertain

14  results." *In re Heritage Bond Litigation*, 2005 WL 1594401 (C.D. Cal. 2005),

15  *quoting Nat'l Rural Telecom. Coop. v. DIREC-TV, Inc.*, 221 F.R.D. 523, 526 (C.D.

16  Cal. 2004). Here, Class Counsel and Defendants concluded it was reasonable to

17  enter into the agreed upon Settlement. Indeed, VBNS had substantial legal,

18  procedural and factual grounds on which to support its defense in this action. Thus,

19  while it contends that these defenses should be rejected, Class Counsel concluded

20  that they were far from unfounded and indeed posed a serious threat of non-recovery

21  to the Class. VBNS' defenses include the following:

### 1. VBNS' Conditional Class No. 1 Defenses.

23       VBNS contends that Plaintiffs' Conditional Class 1 claims relating to the 200%

24  Performance Review provision would fail because the wages at issue were advances,

25  as opposed to earned commissions, such that VBNS was entitled, as a matter of law,

26  to enforce the terms of the applicable Commission Plans. Specifically, VBNS argues

27  that, under the terms of the plan, no "earned" commissions go unadvanced, or are

28  later taken back. Rather, VBNS argues, pursuant to the terms of the plan

8

VAN VLECK
TURNER & ZALLER, LLP

1  commissions are not "earned" until at *least* 6 months *after* the customer has been on

2  contract, and that there are many additional contractual hurdles to "earning" as well.[5]

3  VBNS argues that application of the limitation at issue here comes well *before* such

4  commissions are "earned", and that such contractual limits on advances are permitted

5  under California law.[6]  In addition, VBNS argues that the policy and plan documents

6  grants VBNS the right to change the calculation of commissions at any time prior to

7  the payment of an advance,[7] and therefore cannot be considered a contract for

8  payment of any particular wage.[8]  In short, VBNS argues that the parties to the

9  compensation plans agreed that no particular mathematical computation of

10 _____

11 [5]  Docket 108, at 4-5.  These alleged additional hurdles include: (1) whether the sale is an "eligible sale" under the provisions of the policy and plan at issue (see for example Kemple Decl., Ex. 7, 2006 Policy § 3.1.3); (2) whether the sale is a "qualified sale" under the provisions of the policy and plan at issue (§§3.1.4, 3.2.4); (3) whether the sale is within a commission eligible date pursuant to the provisions of the policy and plan at issue (§§2.1.3, 3.1.8, 3.2.8); (4) whether the sale constitutes a disqualified sale under the provisions of the policy and plan at issue (§§3.1.5, 3.2.5, 3.2.7); (5) whether the sale meets additional eligibility requirements for specific types of sales and/or commissions under the provisions of the policy and plan at issue (§§3.1.9, 3.3.2); (6) whether the sale is subject to a sales adjustment (§3.2.6); (7) whether there has been an approval for a particular type of sale and commission in the exercise of the discretion of management (§3.3.5).

[6]  *E.g.*, Docket 108, at 4-5; *also Prachasaisoredej v. Ralphs Grocery Co.* (2007) 42 Cal.4th 217, 229 ("[e]mployees' expectations" with respect to incentive compensation "derive[] exclusively from the terms of the Plan itself"); *Neisendorf v. Levi Strauss & Co.* (2006) 143 Cal. App. 4th 509, 523 ("eligibility for bonus payments is properly determined by the bonus plans' specific terms and general contract principles"); *Powis v. Moore Machinery Co.* (1945) 72 Cal.App.2d 344 (upholding validity of a commission plan that required customers to pay for goods as a condition precedent to earning commission).

[7]  For example, Verizon Business 2006 Sales Compensation Policies, Kemple Decl., Ex. 7, §1.3.1 (Compensation Plan Changes) provides:  "Verizon Business reserves the right to modify, amend, supersede, supplement, suspend or terminate these Compensation Plans or provisions at any time, with or without notice to the fullest extent permitted by applicable law.  Verizon Business reserves the right to assign you to another Compensation Plan or to remove you from eligibility under the current Compensation Plan at any time at its own discretion."  Many additional provisions vest VBNS with broad discretion in whether to, and how to, calculate any commission advance.  *See also id.* §§ 2.1.1 (Part time/ Job Share); §3.1.5 (Disqualified Sales), §3.5.2 (Uncollectible Customer), §3.5.3 (Fraud and Misrepresentation), §4.1.2 (Adjustments to revenue and sales), §5.8 (Commission and Bonus Audits), §5.14.2 (Commission Review Board).

[8]  *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 460, 462-63 (D. Md. 2002) (holding employee's claims based on employer's incentive plan failed where the plan reserved to employer "unlimited discretion . . . to reduce, modify, recover or withhold incentive pay pursuant to changes in business conditions, individual performance or any other reason management deems appropriate in their sole discretion").

1 commissions is guaranteed and, in all events, that application of this provision in no

2 way "takes back" "earned wages."[9]

3     VBNS also advances procedural defenses to this class claim.  There are only

4 50 persons to whom the 200% Performance Review limitation on commissions was

5 applied, and the provision applied differently depending on whether the

6 commissionable event was based on a Sales quota, a CPE quota, or a Revenue quota.

7 Of the two named plaintiffs, only one (Copeland) was impacted in any way by this

8 provision, and he was impacted solely as to a Sales quota.  VBNS argues that he has

9 standing to pursue only that claim, and notes that of the 50 California employees to

10 whom this limitation on commissions was applied, just 23 involved a Sales quota.

11 Apart from numerosity, VBNS  argues that a class action is not a superior means of

12 resolution given the amounts in controversy (on average $36,335 per class member).

13     **2.**    **<u>VBNS's Conditional Class 2 Defenses.</u>**

14     Plaintiffs' Conditional Class 2 sought waiting time penalties for late base pay

15 or vacation pay, pursuant to Labor Code § 203.  Conditional Class 2 was defined as:

16
17     *All California employees of Verizon after May 25, 2003, for whom Verizon did not issue or deliver at the place of discharge, a check representing their final earned wages immediately upon the date of their termination or within 72-hours of giving notice of resignation.*

18
19 Docket 108, at 6.  The Court has further limited the class to alleged failures to pay

final "base pay" or "vacation pay," and excluded claims for supposed "earned"-but-

20 unpaid commissions.  *Id.* at 5.  The Court also appeared to limit this Class to persons

21

22 _____

[9] Mr. Copeland's alternative theory was that, in some instances, the Commission Review

23 Board did not conduct a review to determine whether it was appropriate to advance sums in excess of 200% of performance.  VBNS produced to Copeland documents which evidence

24 the Commission Review Board's review of individuals for payments in excess of 200% performance.  VBNS also has produced documents demonstrating that the Commission

25 Review Board did approved some departures for some employees, including two of the 23 employees in California who exceeded 200% performance as to their Sales quotas.  And as

26 for those instances in which a the Review Board was alleged not to have met, VBNS has noted Mr. Copeland's concession at deposition that he could not say what the outcome of a

27 Commission Review Board review would have been, and that Mr. Copeland could not articulate any criteria that must govern the exercise of discretion under this provision.  Ex.

28 5, Copeland Depo. at 220:16-221:10, 229:7-25.

VAN VLECK
TURNER & ZALLER, LLP

1   who departed the company prior to May 25, 2007 (date complaint filed).  *Id.* at 6.

2          Citing recent case law, VBNS argues that, because Plaintiffs make no claim of

3   *non-payment* of base pay or vacation pay (only *late* payment), that these claims were

4   subject to a one -year limitations period.[10]  If VBNS is correct, the period covered by

5   this putative class would have been reduced greatly to between May 25, 2006 (one

6   year before the filing of the action) through May 25, 2007 (the date the action was

7   filed and the cut-off period apparently ordered by the Court).  There  were just 822

8   terminations during this period.  In contrast, the negotiated class settlement redefines

9   the class, and covers virtually all terminations of employment from May 25, 2003 to

10  the present – approximately *3500* terminations.

11         VBNS also argues that Conditional Class 2 as defined could not have been

12  certified given the individualized issues and proofs associated with it.  VBNS argues

13  that the Court already found in connection with VBNS' motion to clarify, that

14  ascertainment of the membership of Conditional Class 2 is difficult, and likely not

15  does meet the Court's requirement that the class be "'precise, objective, and presently

16  ascertainable' by reference to objective criteria."  Docket 100, at 14.  Specifically, the

17  Court already noted that "Defendants have not maintained adequate records to

18  determine whether a discharged employee has properly and timely received his or her

19  final earned wages [base and vacation pay] on the date of their termination at the

20  place of discharge" – records that would be required to establish membership in the

21

22  [10] In *McCoy v. Superior Court* (2007) 157 Cal.App.4th 225 (review by the California Supreme Court denied Feb 13, 2008), for example, the Court of Appeal held that the

23  extended statute of limitations set forth in § 203 applies only if the penalties are sought in conjunction with an action for the unpaid wages. If the action seeks to recover only waiting

24  time penalties under § 203, the one-year statute of limitations found in Code of Civil Procedure § 340, subdivision (a) applies.  *McCoy*, 157 Cal.App.4th at 227 ("We determine

25  that when a suit seeks for only waiting time penalties, the one-year statute under section 340(a) governs."); *see also Local 10, International Longs v. J-Way Leasing*, 2008 WL

26  5054081 (Cal. Sup. Ct., May 23, 2008) (holding that the one-year statute of limitations under *McCoy* and CCP §340 did not apply because plaintiffs sought both penalties as well

27  as unpaid wages; applying three year statute under *Kenneth Cole* and CCP §338); *Pineda v. Bank of America, N.A.* (2009) 170 Cal.App.4th 388, 391 (one year statute of limitations was

28  appropriate).

BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  class. Docket 108, at 5.  *Compare Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D.

2  453, 467 (S.D. Cal. 2007) (because employer's practice of not recording start and end

3  times of meal periods would require extensive factual inquiries into which employees

4  had missed breaks, claim not amenable to class treatment; class certification

5  denied).[11]  Indeed, VBNS argues that the time-consuming sampling exercise

6  undertaken concerning just 5% of this class demonstrates that the class as alleged

7  was inappropriate for class treatment.

8        Further, VBNS argues there is no evidence of a "company policy" to pay

9  departing employees late, that would justify any class treatment – a primary basis for

10  Plaintiffs' bid to certify a class.[12]  VBNS argues that all evidence, including the

11  testimony of VBNS' payroll and human resource personnel, as well as VBNS' written

12  policies, is to the contrary.  *See e.g.,* Kemple Decl., Ex. 2 (policy); Ex. 3 (Olson

13  Depo.) at 84:10-17 (errata), 101:7-17.  VBNS further argues the cover letter to which

14  Plaintiffs earlier pointed as evidence of a company policy, was a *national* cover letter

15  (not California specific), used only for employees who were subject to a reduction in

16  force ("RIF"), and offered severance in exchange for a release of any claims.  VBNS

17  argues that, at best, this form letter *could* apply to only 6.5% of terminations within

18  the applicable limitations period (the percentage of departing employees who were

19  RIF'd).  Even then, VBNS argues, that form letter for RIF'd employees merely

20  provides that: "any severance pay will be paid as soon as administratively

21  practicable, *generally* within one month from separation date, provided a signed

22  Release has been received.  Any remaining vacation pay, while not subject to the

23  receipt of a signed Release, will be paid according to the same schedule."  Kemple

24  Decl., Ex. 4 (Cegielski Depo.) at 170-171.  VBNS argues that, even in this context,

25  _____

26  [11] In "light of the limited evidence" on the topic, the Court permitted the class to survive and granted Plaintiffs time to engage in discovery to determine whether this class could be

27  ascertained, to be followed by a "final" request for certification.  Docket 108, at 5-6, 10.

   [12] Plaintiffs argued that "Verizon has implemented a non-compliant policy that guarantees

28  late payment in the vast majority of terminations."  Docket 52-11, Mot. to Certify, 6:16-18.

1  the "general" language of this national RIF form letter did not trump express written

2  policies tailored to California's unique requirements.  *Id.* at 124:4-17; Ex. 3 (Olson)

3  at 126:12-127:7, 132:7-133:1.  Further still, of the 5% of terminations sampled by the

4  parties, though Plaintiffs' and VBNS' results vary greatly, all agree that for every

5  category only a *minority* of final payments *could* be violations even before reaching

6  the "willfulness" requirement of the statute.  VBNS argues that this sampling

7  mitigates against finding any "policy that guarantees late payment in the vast

8  majority of terminations" to support class treatment.

9       Though Plaintiffs have responses to VBNS' arguments, and believe that they

10  would establish class-wide liability on this claim, Plaintiffs recognize the strengths of

11  VBNS' arguments and the unpredictability of litigation.

12       ### 3.   VBNS' Conditional Class 5 Defenses.

13       Conditional Class 5 involved alleged misclassification of persons in four

14  distinct job titles.  California exemption analysis turns on an analysis of the *actual*

15  job duties performed by *each individual*, including a determination of the amount of

16  time that the employee spends on particular functions.  *Ramirez v. Yosemite Water*

17  *Co.*, 20 Cal. 4th 785, 802 (1999).  A rigorous individual inquiry is required absent

18  evidence of "company-wide policies governing how employees spend their time, or

19  … uniformity in work duties and experiences that diminish the need for

20  individualized inquiry." *Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637,

21  640 (S.D. Cal. 2007) (emph. added).[13]  VBNS argues that Plaintiffs have presented

22  no evidence of *any* "company-wide policies governing how employees spend their

23  time, or … uniformity in work duties and experiences that diminish the need for

24  individualized inquiry."  It contends that the evidence offered by plaintiffs were their

25

26  ───────────────
[13] Numerous courts have denied class certification for just this reason. *See e.g., Jimenez v. Dominoes Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006); *Sepulveda v. Wal-Mart Stores*

27  *Inc.*, 237 F.R.D. 229, 249 (C.D. Cal. 2006); *Moeck v. Gray Supp. Corp.*, 2006 WL 42368 (D.N.J. 2006); *Diaz v. Elec. Boutique of Am., Inc.*, 2005 WL 2654270, *6-7 (W.D.N.Y.

28  2005); *Reich v. Homier Distrib. Co., Inc.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005).

Van Vleck
Turner & Zaller, LLP

BRIEF IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT

1  own declarations, which do not even purport to establish that persons in the same

2  positions[14] – let alone persons in other positions – perform identical daily duties for

3  identical periods of time.[15]  Further, VBNS argues that the recent decision in *In re*

4  *Wells Fargo Home Mortg. Overtime Pay Litigation*, __ F.3d __, 2009 WL1927711

5  (9th Cir., July 07, 2009), wholly rejects Plaintiffs' theory for certification based on

6  uniform classification of job positions.[16]  VBNS argues that at some point it would

7  have become apparent that these claims could not be adjudicated class wide basis.

8       VBNS also argues that these sub-classes are not sufficiently numerous to

9  warrant class treatment.  From  January 1, 2006 to January 24, 2009, only 37

10  employees have held the "Account Manager I" title, only 42 employees have held the

11  "Specialist-Service" title, only 81 employees have held the "Service Manager" title

12  and only 89 employees have held the "Account Manager II" title.[17]  Recognizing this

13  issue, the Court permitted discovery specifically on questions of numerosity, and

14  instructed Plaintiffs that the Court "expects Plaintiffs to submit additional evidence to

15  support their assertion that each class involves a *large number of employees*."  See

16  Docket # 100, at 9 ("[C]ommon sense cannot lead one to conclude that *three-*

17  *thousand employees*, when qualified by multiple requirements, will result in a

18  ---

[14] VBNS argues that even persons with the same job title often work in different business

19  channels and are compensated (and thereby incented) under different compensation plans.
   Declaration of Mary Basil, ¶ 5, Docket # 56-1; Decl. of Greenberg, ¶ 4, Docket # 56-1.

20  [15] *Sav-On Drug Stores v. Superior Court*, 34 Cal.4th 319, 329 (2004), involved positions
   which the parties agreed performed common functions.  The court concluded that common

21  issues predominated because the only issue was whether these uniform tasks were exempt
   or non-exempt work. *Id.* at 331 ("the parties disagree on whether certain identical work

22  tasks are 'managerial' or 'non-managerial'").  There is no such agreement here.  *See Holt v.
   Rite-Aide Corp.*, 333 F.Supp. 2d 1265, 1272 (M.D. Ala. 2004)("The status as non-exempt

23  cannot be litigated through representative proof, as demonstrated by the Plaintiffs' argument
   that the Defendant should conduct individual audits before classifying ... Managers").

24  [16] *Id.* ("In contrast to centralized work policies, the blanket exemption policy does nothing
   to facilitate common proof on the otherwise individualized issues"; "[t]he fact that an

25  employer classifies all or most of a particular class of employees as exempt does not
   eliminate the need to make a factual determination as to whether class members are actually

26  performing similar duties.")

27  [17]Many of these individuals, including Plaintiff Dagnesses, held more than one of these
   titles.  Individuals who held more than one of the positions at issue are counted twice.  As

28  such, the numbers above overstate the number of *persons* within Class 5.  The total is 199.

Van Vleck
Turner & Zaller, LLP

1  *similarly large group of employees*.  The Court therefore expects Plaintiffs to submit

2  additional evidence to support their assertion that each class involves a *large number*

3  *of employees*")(emphasis added).  VBNS argues that none of these Conditional

4  Classes – of 37 persons, 42 persons, 81 persons and 89 persons – involve the

5  "similarly large group of employees" to which the Court made reference.  *Id.*

6      Finally, even had the Court permitted Conditional Class 5 to go forward,

7  VBNS believes that it would have established proper classification of each person.

8      Though Plaintiffs believe that ultimately they would have prevailed, they

9  concede there was a substantial risk that VBNS could have prevailed on each of the

10 claims the classes were pursuing.  Absent settlement, Plaintiffs would have to

11 establish class-wide liability at trial, and then prove up various complex issues

12 regarding the calculation of commissions, the amount of waiting time penalties

13 certain members of the class are entitled to as well as the actual job duties (and

14 number of hours worked) for each member of the misclassification class, as well as

15 defend any appeal from a judgment favorable to them (often under a *de novo* standard

16 of review).  In contrast, the proposed Settlement ensures timely and substantial relief

17 to all Settlement Class Members.  These factors, therefore, weigh heavily in favor of

18 approving the Settlement.

19 **B.**    **The Settlement Is A Fair Compromise Of Contested, Factually**
          **Complex Claims Subject To Many Legal Uncertainties.**

20     A settlement *is not* judged solely against what might have been recovered had

21 plaintiffs prevailed at trial, nor does the settlement have to provide 100% of the

22 damages sought to be fair and reasonable.[18]  Here, in the face of the substantial

23 uncertainties identified above, the parties agreed to a compromise settlement

24 providing Class No. 1 members **43% of their maximum recoveries** on their Class

25

26 [18]*Rebney v. Wells Fargo Bank*, 220 Cal.App.3d 1117, 1139 (1990)("even if the relief
    afforded by the proposed settlement is substantially narrower than it would be if the suits
27  were to be successfully litigated, this is no bar to a class settlement because the public
    interest may indeed be served by a voluntary settlement in which each side gives ground in
28  the interest of avoiding litigation.").

BRIEF IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT

1  No. 1-related claims, or approximately **$15,578.65 per claim.** As for Class No. 2,

2  Class Counsel have negotiated a Settlement Class definition that covers **six-years** of

3  terminations (voluntary, involuntary or RIF), and that entitles **each** employee

4  terminated in that period to recovery **without need for any individualized proof**.

5  Lastly, Class No. 5 members fair even better as they can recover an average of

6  $2,150 even though it would have been exceedingly difficult to maintain certification

7  through trial. Considering the large recovery obtained on behalf of the Class and the

8  risks of continued litigation, this factor heavily favors approval of the Settlement.

9      **C.**    <ins>**The Extensive Discovery Completed And The Stage Of The Litigation Favor Approval Of The Settlement.**</ins>

10      As detailed above, prior to reaching an agreement Class Counsel conducted

11  substantial discovery regarding VBNS' policies and procedures relevant to this

12  action. In total, Class Counsel: (1) obtained six full days of deposition testimony

13  from VBNS' various Corporate representatives; (2) obtained responses to well over

14  50 detailed special interrogatories; (3) obtained and reviewed over 15,000 pages of

15  responsive documents; and (4) conducted hundreds of interviews with VBNS' current

16  and former employees regarding the final payment of wages, their job duties and the

17  calculation and payment of commissions during the relevant time period. It was only

18  after Class Counsel obtained and analyzed this information that it mediated this

19  matter before Mr. Rottman. Turner Decl. ¶¶ 4-13; Van Vleck Decl. ¶¶ 3-14.

20      Plaintiffs took all of this information as well as the procedural posture of the

21  case into account in reaching the proposed settlement. All of this information was

22  instrumental in Class Counsel's assessment of the strength and weaknesses of the

23  case and the benefits of the proposed settlement. In addition, counsel on both sides

24  relied on their respective substantial litigation experience in similar employment

25  class actions when negotiating and arriving at the proposed settlement. Van Vleck

26  Decl. ¶¶ 13-14, 19-25. The litigation, therefore, has reached a stage where the parties

27  have a clear view of the strengths and weaknesses of their cases sufficient to support

28  the settlement. *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617 (N.D.Cal. 1979).

**D.**    **Counsel Are Experienced And Jointly Support The Settlement.**

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528-29.[19]  Class Counsel is particularly experienced in wage and hour employment law and class actions and the Court has already ruled that Class Counsel will adequately litigate the interests of the Class. Van Vleck Decl. ¶ 19-25; Turner Decl. ¶ 13.  Moreover, counsel on both sides share the view that this is a fair and reasonable settlement in light of the complexities of the case.  Accordingly, given the risks inherent in litigation and the defenses asserted, and based upon Class Counsel's experience, the Settlement is fair, adequate, and reasonable and one which should be granted final approval.

**E.**    **The Reaction Of The Class Overwhelmingly Favors Final Approval.**

As discussed above, the reaction of the Class to the Settlement cannot be described as anything other than favorable.  **Over 90% of the Settlement Funds allocated to Class No. 1** have been claimed and will be distributed upon final approval.  As for Class No. 2, 20% submitted timely claim forms even though the class period extends from 2003 and it must be assumed that a sizable portion of individuals simply lost interest in submitting a claim form against their former employer.  As for Class No. 5, 36% of the Settlement Funds allocated to that Class were claimed.  In total, **over 48% of the Net Settlement Amount ($1,033,041.37)** was claimed by the Classes and will be distributed upon this Court's final approval.

Further establishing the overwhelming endorsement of the Class is the fact that out of the 3,506 Notice Packets mailed, just **three individuals** elected to opt-out of the Settlement and none objected (despite the Court-approved notice specifically advising class members of that right).  This class reaction further demonstrates the fairness, adequacy and reasonableness of the Settlement.  *See In re Omnivision*, 559

---

[19] *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v. Baumer*, 1989 WL73211 at *1 (C.D. Cal. 1989)("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

Van Vleck
Turner & Zaller, LLP

1   F. Supp at 1043 (final approval granted; three class members objected).[20]

2   **VII.  THE FEES SOUGHT ARE REASONABLE, FAIR AND APPROPRIATE**

3       A plaintiff who prevails in obtaining a monetary recovery in a wage and hour

4   class action is statutorily entitled to payment of his attorney fees and costs. *See*

5   *Labor Code* § 218.5; *Code of Civ. Proc.* § 1021.5(a). Such an attorney fee award is

6   triggered regardless of whether the legal action has produced benefits by way of trial

7   or voluntary settlement. *See Maria P. v. Riles*, 43 Cal. 3d 1281, 1290-91 (1987);

8   *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 33 Cal. 3d 348, 352-53 (1983).

9       Ninth Circuit courts have the discretion to award attorneys' fees based on

10   either the lodestar method (essentially a modification of hourly billing) or the

11   percentage method. *In re Omnivision,* 559 F. Supp. 2d at 1046, *citing Chem. Bank v.*

12   *City of Seattle*, 19 F. 3d 1291, 1296 (9th Cir. 1994). The objective in either case is to

13   award fees that are "reasonable under the circumstances." *Id.* at 1294; *Apple*

14   *Computer, Inc.*, 126 Cal. App. 4th at 1270 ("[t]he ultimate goal . . . is the award of a

15   'reasonable fee' to compensate counsel for their efforts, irrespective of the method of

16   calculation."). Thus, although the "benchmark" percentage in the Ninth Circuit is

17   25% and courts routinely award attorney's fees "of 30% or more in complex class

18   actions," that amount should be "adjusted, or replaced by a lodestar calculation,

19   when special circumstances indicate that it be either too small or large in light of the

20   hours devoted to the case or other relevant factors." *In re Heritage Bond Litigation*

21   at 19; *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d 1301, 1331 (9th Cir.

22   1990). Accordingly, the court may look to the following factors when adjusting the

23   attorney fee percentage: (i) the results achieved; (ii) the risk of litigation; (iii) the

24   skill required and the quality of work; (iv) the contingent nature of the fee and the

25   financial burden carried by the plaintiffs; (v) the reaction of the class to the proposed

26   fee; and (vi) awards made in similar cases. *In re Omnivision,* 559 F.Supp.2d at 1046.

27

28   [20]*E.g. Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir.1994)(approved; 45 objectors);
*Rodriguez v. West Publishing*, 563 F.3d 948 (9th Cir. 2009)(approved; 54 objectors.)

VAN VLECK
TURNER & ZALLER, LLP

**A.**   **Excellent Results Class Counsel Achieved Support The Fee Request.**

The overall result and benefit to the class from the litigation is the "most critical factor" in granting a fee award. *Hensley v. Echerhart*, 461 U.S. 424, 436 (1983); *In re Omnivision*, 559 F. Supp. at 1047.  Here, Class Counsel obtained an outstanding result for the Class Members despite a powerful defense.  As previously discussed, the Settlement nets members of Class No. 1 **43% of their maximum recoveries** on their claims, or approximately **$15,578.65 per claim.**  As for Class No. 2, Class Counsel have negotiated a Settlement Class definition that covers **six-years** of terminations (voluntary, involuntary or RIF), and that entitles **each** employee terminated in that period to recovery **without need for any individualized proof**.  Lastly, Class No. 5 members fair even better as they can recover an average of **$2,150** by doing no more than submitting a proper claim form.  These massive recoveries – in the face of the numerous factual and legal uncertainties detailed above – alone warrants Class Counsel's request for attorney fees.[21]  *See Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 148 (E.D. PA 2000) (awarding one-third in fees from settlement class consisting of vocational students that was 17% of the tuition that class members paid); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (attorney fees of 33.8% of settlement awarded where counsel recovered 10% of damages).

Above and beyond that which was required by the Settlement and approved by the Court, Class Counsel bird-dogged the class members throughout and assisted them in filing timely and complete claim forms.  In total, Class Counsel assisted hundreds of Class Members in filing out and timely submitting their Claim Forms.   Indeed, Class Counsel hired a full-time clerk to review each claim form filed and to ensure that all information was correctly submitted.  (In this regard, the parties agreed that all Claim Forms submitted would be immediately shared by the claims

---

[21]   The Settlement also assures that a recovery is distributed by the end of the calendar year as opposed to waiting, possibly, several more years for a similar or less favorable result.

1   administrator with all counsel.) *Id.* ¶ 14-15.  With these efforts, Class Counsel was

2   able to catch discrepancies in more than 165 claim forms, resulting in payment of

3   $135,000 in claims that would otherwise have been rejected. *Id.*

4          Further, and again in addition to the notice given, to avoid the inevitable

5   circumstance where a class member did not receive, or overlooked, the noticed

6   mailed to him or her, during the Claims Period Class Counsel attempted to contact

7   each member of Classes 1 and 5 (approximately 250 individuals) to inform him/her

8   of the Settlement and provide assistance in submitting his/her Claim Forms.  These

9   efforts further increased class participation.  For example, when Class Counsel

10  contacted one Class Member entitled to approximately $27,000 in settlement

11  proceeds, that individual stated that he had thrown away the Notice Packet because

12  he had assumed he would only be entitled to an insignificant sum.  After Class

13  Counsel explained the terms of the Settlement, the Class Member submitted a timely

14  claim form.  *Id.*  Class Counsel estimates that its efforts in contacting non-responsive

15  Class Members resulted in the submission of another approximate $100,000 in

16  claims that would have not otherwise been submitted.  *Id.*

17          **B.     Substantial Litigation Risks Support Class Counsel's Fee Request.**

18          The risk that further litigation might result in Plaintiffs not recovering at all,

19  particularly in a case involving complicated legal issues, is a significant factor in the

20  award of fees.  *See Vizcaino*, 290 F. 3d at 1048.  Plaintiffs did not face an easy path if

21  this case proceeded.  First, Plaintiffs would have had to prevail on their Final Motion

22  for Class Certification, which was due to be filed a few weeks after the mediation.

23  As stated above, VBNS believes it had a variety of procedural and factual defenses

24  that would have prevented certification.  In addition, even if the Court granted final

25  certification – as discussed above – VBNS believes that it would have prevailed on

26  the merits and, therefore, denied the Class any recovery at all.  In short, Plaintiffs

27  faced years of risky litigation that ultimately might have left them empty-handed.

28          **C.     The Difficulty Of The Questions Involved And The Skill In
        Presenting Them Support Class Counsel's Fee Request.**

1    As previously noted, this action involved specialized and highly contested

2  legal issues which are at the cutting edge of recent developments in the law.  VBNS

3  vigorously contested liability throughout the litigation and presented several

4  significant defenses.  Nevertheless, before obtaining conditional certification, Class

5  Counsel:  (1) defended against numerous motions to dismiss/motions to strike;

6  (2) moved for ex parte relief in order to clarify the date by which Plaintiffs had to

7  move for certification; (3) engaged in extensive discovery; (4) prepared and briefed

8  the motion for class certification; (5) successfully opposed VBNS attempt to strike

9  the motion for certification before the Court issued a ruling; (6) moved to amend the

10  Complaint to add additional claims and remedies; (7) filed a motion to compel (along

11  with supplemental briefing) before obtaining the contact information for putative

12  class members; (8) reviewed hundreds of pages of deposition transcripts; and

13  (9) reviewed and analyzed over 14,000 pages of responsive documents in this matter.

14    Accordingly, considering the two and one-half years of protracted litigation

15  that preceded the ultimate resolution of this matter and the fact that Class Counsel

16  obtained conditional certification of three classes before the parties conducted

17  mediation, an award of 32% is reasonable in this matter.

18    **D.    The Contingent Fee Supports Class Counsel's Fee Request.**

19    There is a substantial difference between the risk assumed by attorneys being

20  paid by the hour and attorneys working on a contingent fee basis.  The attorney being

21  paid by the hour can go to bank with his fee, while the attorney working on a

22  contingent basis can only log hours while working without pay towards a result that

23  will hopefully entitle him to a market place contingent fee taking into account the

24  risk and other factors of the undertaking.  *See Powers v. Eichen*, 229 F. 3d 1249,

25  1256 (9th Cir. 2000); *Medical X-Ray*, 1998  WL 661515 at * 7 (justifying fee award

26  where counsel spent years engaged in litigation without certainty of compensation).

27    Here, Class Counsel proceeded entirely on a contingency basis and advanced

28  all costs incurred to date in this litigation.  Van Vleck Decl. ¶ 26-29.  As detailed

1    above, not only was there no guarantee of recovery, there was a real chance that

2    Class Counsel would receive nothing for their efforts as Plaintiffs faced substantial

3    legal, factual and procedural hurdles.  For example, Class Counsel prepared and filed

4    its Motion for Class Certification even though there was a very real possibility the

5    Court would find that motion was untimely pursuant to Local Rule 23-3.  Moreover,

6    Class Counsel prepared and filed its certification motion even though the Court had

7    not yet ruled which – if any – of Plaintiffs' claim would survive VBNS' pleading

8    challenge.

9         Class Counsel subjected itself to a heavy financial risk in terms of both time

10   and out-of-pocket expenses.  Accordingly, Class Counsel's requested fee award is

11   reasonable in light of the circumstances surrounding the litigation.  *In re Omnivision*,

12   559 F.Supp.2d at 1047 ("substantial outlay" of time and costs by Class Counsel in

13   light of risk of non recovery supported requested fee award).

14        **E.    Awards In Similar Cases Support Class Counsel's Fee Request.**

15        The attorneys' fees requested are within the range of fees awarded in

16   comparable cases.  Van Vleck Decl. ¶ 27-30.  Courts routinely approve percentages

17   in excess of this amount in wage and hour class actions and – in cases of $10 million

18   or less – have generally awarded between 30% to 50% of the settlement fund.  *See In*

19   *re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,

20   822 (3rd Cir. 1995) ("fee awards have ranged from 19% to 45% of the settlement

21   fund); *Smith v. Dominion Bridge Corp.*, 2007 WL 110272 at *( E.D. Pa 2007) ("[A]

22   normal contingency fee in this type of case would be 30% to 40% of the recovery

23   and courts have awarded 33.3% in many cases with settlement funds larger than

24   $750,000.").[22]  In fact, "empirical studies show that, regardless of whether the

25

26   [22]  In calculating a percentage fee award in cases such as this, attorneys' fees are properly awarded on the basis of the total value of the settlement rather than claims made to the class.  *Lealo*, 82 Cal. App. 4th at 51 (fees of approximately $2,000,000 approved on

27   settlement value of $700,000 where claims totaled $706,600, or 47% of the total available; *Williams v. MGM-Pathe Comms.*, Co., 129 F.3d 1026, 1027 (9th Cir. 1997) (fee award

28   should have been based on 33.3% as agreed by the parties based on total recovery value of

Van Vleck
Turner & Zaller, LLP

1  percentage method or the lodestar method is used, fee awards in class actions average

2  around one-third of the recovery." *Shaw v. Toshiba Am. Info. Systems*, 91 F.Supp. 2d

3  942, 972 (E.D. TX. 2000). Attorneys' fees of roughly 32% of the total Settlement

4  Proceeds is reasonable in the light of prevailing fees awarded in other cases.

5  **F.    No Class Members Disapproved Of The Requested Fee Award.**

6      The existence or absence of objectors to the requested fee award is a factor in

7  determining the appropriate fee award.[23]  Here, despite being specifically advised of

8  the right to object, ***no class member has objected to the Settlement or fee request.***

9  Blair Decl. ¶ 9.  This further establishes that the request is reasonable and fair.

10  **G.    The Fee Request Is Confirmed By The Lodestar Methodology.**

11      Courts often compare an attorney's lodestar with a fee request made under the

12  percentage of the fund method as a "cross-check" on the reasonableness of the

13  requested fee. *Vizcaino*, 290 F.3d at 1050 ("[T]he lodestar calculation can be helpful

14  in suggesting a higher percentage when litigation has been protracted [and] may

15  provide a useful perspective on the reasonableness of a given percentage award.")

16      Here, Class Counsel has calculated the lodestar for their work on this case at

17  hourly rates reflecting those currently earned in the market.  In total, Class Counsel

18  billed 2,526.4 hours, totaling $1,316,560 in attorney's fees.  Van Vleck Decl. ¶ 26-

19  30; Turner Decl. ¶ 16.[24]  This loadstar – **without a multiplier –** is over $190,060

20  more than the fees requested by Class Counsel.  Class Counsel, therefore, would

21

22  $4.5 million, though the actual payout totaled under $10,000; "court abused discretion by
   basing fee on the class members' claims against the fund rather than on a percentage of the
23  entire fund or on the loadstar.")

24  [23] *In re Omnivision*, 559 F. Supp. 2d at 1048 (finding the absence of any objectors
   supported fee award); *Cullen*, 197 F.R.D. at 148-49.

25  [24] In this case, the hourly rates for the attorneys who worked on this matter are:  Brian Van
   Vleck $550; Daniel J. Turner $475; and Anthony Zaller $450.  Van Vleck Decl. ¶ 30.
26  These rates are reasonable as they are within the range of fees that attorneys with similar
   experience are charging in California.  Van Vleck Decl. ¶ 30; Turner Decl. ¶ 16; *see also*
27  Van Vleck Decl., Exh. 8; 2006 National Law Journal survey of hourly rates.  (There,
   thirteen California law firms provided their hourly billing rates.  Ten of these thirteen
28  California firms regularly charged $550 or more per hour for the services of the partners.)

1  have received markedly more had they been paid by the hour as opposed to a

2  contingency fee basis.  Van Vleck Decl. ¶ 30; Turner Decl. ¶ 16.  This lodestar cross-

3  check indicates that the fees requested is reasonable and should be approved.[25]

4  **VIII.   THE NAMED REPRESENTATIVES' AWARDS ARE REASONABLE**

5       "Incentive awards are fairly typical in class action cases." *Rodriquez*, 563 F.3d

6  at 958.  Such awards are intended to "compensate class representatives for work done

7  on behalf of the class, to make up for financial or reputational risk undertaken in

8  bringing the action, and, sometimes, to recognize their willingness to act as a private

9  attorney general." *Id.*[26]

10      Here, the Court is asked to approve the proposed service awards in the amount

11  of $25,000 to Named Plaintiff Patrick A. Copeland and $10,000 to Named Plaintiff

12  Jackie Dagnesses, respectively.  Both of Plaintiffs' efforts contributed greatly to the

13  litigation on behalf of the class.  The following is a non-exhaustive list of the

14  significant contributions Copeland made to the Class throughout this litigation:

15  • Prior to the filing of the Complaint, Copeland met with Class Counsel on
    numerous occasions to discuss VBNS': (1) commission plans; (2) overall
16   compensation system; (3) sales segments/channel; (4) general corporate
    structure; (5) policies and procedures regarding the "booking" of a sale for
17   purposes of calculating commissions; and (6) Account Managers job duties;

18  • After the filing of the Complaint, Copeland repeatedly met with counsel to
    review documents produced and provide his insight on various issues VBNS
19   raised throughout the litigation;

20

21  [25] Class Counsel incurred $39,598.20 in litigation costs in bringing this matter to resolution.

22  Pursuant to the terms of the Settlement, Class Counsel is seeking these reasonable costs as well.  Van Vleck Decl. ¶ 26, Exh. 9.

23  [26] *See also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) (approving

24  $303,000 payment to each class representative plaintiff in employment case settling before class certification); *Martens v. Smith Barney*, No. 96 Civ. 3779, 1998 WL 1661385 *4

25  (S.D.N.Y. July 28, 1998) and 181 F.R.D. 243, 262 (S.D.N.Y. 1998) (approving payments of up to $150,000 for named plaintiffs, for a total of $1.9 million in incentive payments for

26  employment case settling prior to class certification); *Roberts v. Texaco*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving incentive payments up to $85,000 for named plaintiffs in

27  employment case settling prior to class certification); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for efforts in

28  bringing class case); *Manual* § 21.62 n. 971 (noting that service awards are warranted).

BRIEF IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT

VAN VLECK
TURNER & ZALLER, LLP

- Copeland personally attended each of the *six* 30(b)(6) depositions conducted in this action. Copeland's participation in these depositions was particularly crucial, for example sifting through thousands of pages of documents produced and highlighting those portions relevant to the counsel's inquiries;

- Copeland assisted Counsel in preparing the Motion for Class Certification and in drafting his supporting declaration – the primary evidence relied on by the Court in granting conditional certification. Copeland Decl. ¶ 3-11.

Accordingly, to say that Copeland was actively engaged in this litigation is a dramatic understatement as he easily dedicated well over 200 hours of his own time to assisting Class Counsel in this action. *Id.* at ¶ 12 .

Ms. Dagnesses also actively participated in this action. After joining the action, Dagnesses provided valuable information regarding the job duties of Service Managers and Specialists during the Class Period. In addition, Dagnesses spent considerable time analyzing VBNS' final pay procedures as well as documents regarding the actual job duties of Service Managers. Lastly, Dagnesses spent dozens of hours preparing for and sitting for her deposition in this matter. Van Vleck Decl. ¶ 18; Declaration of Jackie Dagnesses ¶ 3-6. Accordingly, Dagnesses' active engagement in this two year litigation justifies this modest service award.

## IX. <u>CONCLUSION</u>

For the foregoing reasons, Class Counsel respectfully requests the Court: (i) grant final approval of the Settlement as fair, adequate and reasonable; (ii) grant Class Counsel's request for attorneys' fees in the amount of $1,123,500 (32.5% of the value of the settlement); (iii) award Class Counsel $39,598.20 in costs; (iv) grant incentive awards to Patrick Copeland in the amount of $25,000 and Jackie Dagnesses in the amount of $10,000; and (v) enter the proposed order filed herewith.

Dated:  October 20, 2009          VAN VLECK TURNER & ZALLER, LLP
                                  Brian F. Van Vleck, Daniel J. Turner


                                  By: _____/s/ Brian F. Van Vleck_____
                                  Attorneys for Certified Classes and Plaintiffs
                                  Patrick A. Copeland and Jackie Dagnesses